[Civil No. 900. Filed November 18, 1905.]

[83 Pac. 361.]

TERRITORY OF ARIZONA, at the Relation and to the Use of Thomas Devine, Treasurer and ex-Officio Tax-Collector of Coconino County, Plaintiff and Appellant, v. EDWARD B. PERRIN, Defendant and Appellee.

1. PUBLIC LANDS—FOREST RESERVATIONS—RELINQUISHMENT OF RESERVE LANDS BY OWNER—TITLE—VESTS IN UNITED STATES IMMEDIATELY —ACT CONGRESS JUNE 4, 1897, CHAP. 2, 30 STATS. 36, CONSTRUED.— Where an owner of land within a forest reserve executed a deed of relinquishment to the United States to such land under the act of Congress, *supra,* providing ''That in cases in which a tract covered by an unperfected *bona fide* claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, . . . relinquish the tract to the government, and select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent,'' the title vested in the government upon the filing of the deed for record, there being nothing in the act which makes the vesting of title dependent upon the selection of land granted in lieu thereof.

2. TAXES AND TAXATION—LANDS SUBJECT TO—ACT CONGRESS JUNE 4, 1897, CHAP. 2, 30 STATS. 36, CITED—REV. STATS. ARIZ. 1901, PAR. 3833, AND TIT. 62, CHAP. 5, CONSTRUED.—Where the owner of land executed a deed of relinquishment to the United States under the act of Congress, *supra,* providing for the relinquishment of lands within a forest reserve and the selection of other vacant lands in lieu thereof, and the deed was recorded January 31, 1903, and the secretary of the interior approved the abstract of title and selection of lieu land in April, 1903, land relinquished was not assessable against the owner for the year 1903, although paragraph 3833, *supra,*

makes taxes a lien on the property assessed, as of the first Monday in February of each year, inasmuch as the tax-rate is not fixed until the third Monday in August of each year, and the levy and assessment is not completed until the duplicate assessment-roll is prepared and certified as provided by chapter 5, *supra.*

3. SAME—LANDS ACQUIRED BY THE UNITED STATES—ATTEMPT TO TAX VOID.—Lands which have become the property of the United States at the time taxes are levied and assessed are no longer subject to taxation, and the acts of taxing officers levying taxes thereon are void and of no effect.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Coconino. Richard E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

Edward M. Doe, for Appellant.

Joseph H. Kibbey, for Appellee.

CAMPBELL, J.—This is an action brought by the territory of Arizona, at the relation of the treasurer and *ex-officio* tax-collector of Coconino County, against Edward B. Perrin. The action is brought under the provisions of act No. 92, page 148, of the legislative assembly of 1903, to enforce against certain lands the taxes levied thereon for the year 1903. The appellee was in April, 1902, and for some years prior thereto had been, the owner of the lands upon which taxes were sought to be imposed. Said lands were embraced within the odd-numbered sections within the general limits of the Atlantic and Pacific Railroad land grant, and, while not owned by the United States, were within the exterior limits of what was then and is now the San Francisco Mountain Forest Reserve, a forest reserve theretofore duly established by the president of the United States. During the month of December, 1901, and up to the month of April, 1902, appellee had correspondence with the secretary of the interior of the United States, looking to the acquisiton by the United States of the land held by the appellee, that the same might be incorporated in and become a part of the forest reservation. He made a proposition to the department of the interior, offering to relinquish to the United States the lands in question, and to

select in lieu thereof vacant unappropriated public lands within certain prescribed limits, and in the manner provided by the act of Congress of June 4, 1897, 30 Stats. 36, chap. 2. There were certain outstanding contracts granting the right to cut timber from a portion of the lands involved, and at the instance of the secretary of the interior the appellee agreed to use his good offices in securing from the holders of these timber privileges compliance with rules and regulations to be prescribed by the interior department. Forms of deeds of relinquishment were submitted by the appellee to the secretary of the interior, and approved by that officer. The proposition made was accepted by the secretary of the interior in April, 1902, and subsequently, in the same month, the president of the United States, at the request of the secretary of the interior, issued his proclamation incorporating into the reserve the lands of appellee. It was a part of the agreement entered into with the secretary of the interior that the appellee should as soon as practicable execute to the United States deeds of relinquishment of said lands. These deeds were so executed, and on the thirty-first day of January, 1903, were caused to be recorded in the office of the recorder in the county in which the lands are situated, and abstracts of title to the said lands were furnished to the secretary of the interior at his request. Thereafter, in April, 1903, the secretary of the interior approved the said abstracts of title and the deeds of relinquishment, with the exception of a small part of the land conveyed, which at the time this action was tried in the court below had not yet been approved. After the agreement reached by correspondence and the proclamation of the President, appellee in no wise attempted to exercise any claim or control over the lands, but they were and remain under the complete control of the secretary of the interior, and are and have been in all respects treated as a part of the forest reservation.

It is contended by the appellant that, although the deeds of relinquishment were filed and recorded on January 31, 1903, the government took no title to the lands until the deeds and abstracts were approved by the secretary of the interior, and the selection of the lands in lieu of those relinquished were made by the appellee and approved by the land department of the government, and, as such selections and

approvals were not made until after the first Monday in February, 1903, the lien for taxes for the year 1903, by virtue of the provisions of paragraph 3833 of the Revised Statutes of Arizona of 1901, attached to the lands on the first Monday in February in that year. The act of June 4, 1897, under which the lands were relinquished to the government, provides: "That in cases in which a tract covered by an unperfected *bona fide* claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent." It will be observed that the act itself makes no provision as to the manner in which the relinquishment to the government shall be made. The whole subject is left under the control of the land department of the government. *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, 23 Sup. Ct. 692, 24 Sup. Ct. 860, 47 L. Ed. 1064.

There is nothing in the act of Congress which makes the vesting of the title in the United States of the relinquished lands dependent upon the selection of the lands granted in lieu thereof. The appellant urges that, this being an exchange of lands, the title does not vest in the government until the selection of the lieu lands has been made and approved. We are unable to agree with this contention. In our view of the statute, the legal title vested in the United States immediately upon the filing for record of the deeds of relinquishment, subject, perhaps, to be divested should the secretary of the interior disapprove the abstracts of title. The consideration for the grant is the right, under the law, to select other lands in lieu of those relinquished. After the deed is recorded and delivered, the grantor cannot, by any act of his, encumber the title as against the United States. He has no right to the land which he can enforce.

We have carefully examined the opinion of the supreme court in the case of *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, *supra*, relied upon by appellant, and find nothing therein in conflict with these views. The question there presented was the time when the title vested to lands in lieu of lands relinquished, and the court held that such title vested

only after the approval of the selection by the land department of the government.

There is another reason why this action must fail, at least as to the greater part of the lands involved. The secretary approved the abstracts of title, and, so far as the record discloses, the selection of the lieu lands, in April, 1903. Under the provisions of the laws of Arizona, the tax-rate is not fixed until the third Monday in August of each year, and the levy and assessment is not completed until the duplicate assessment-roll is prepared and certified, as provided by chapter 5 of title 62 of the Revised Statutes of Arizona of 1901. When in April, 1903, the secretary of the interior approved the abstracts of title to the lands, and, so far as · the record shows, the lieu selections were made and approved, all had been done that even the appellant contends should be done to vest the full legal and equitable title in the United States. Lands acquired for public purposes during the period between the first and final steps of taxation are exempt from taxes levied during the year in which they are acquired. *Bannon* v. *Burnes,* (C. C.) 39 Fed. 892; *Gachet* v. *City of New Orleans,* 52 La. Ann. 813, 27 South. 348; *Buckhout* v. *City of New York,* 176 N. Y. 363, 68 N. E. 659. And this is true even where, as in this territory, the legislature has declared that a lien for taxes shall attach at a date prior to the time when the first steps are taken to subject the real estate to taxation. There can be no real or effective lien until the amount of the taxes is ascertained and assessed. "In the nature of things, no tax or assessment can exist, so as to become an encumbrance on real estate, until the amount thereof is ascertained and determined." Black on Tax Titles, sec. 189; *Dowdney et al.* v. *Mayor etc.,* 54 N. Y. 186. And see *Gillmor* v. *Dale,* 27 Utah, 372, 75 Pac. 932. Under such provisions of law, when the rate of taxes is fixed and the amount determined and levied, the lien for such amount relates back and attaches as of the date specified in the statute. *McLaren* v. *Sheble,* 45 Mo. 130; *Reeve* v. *Kennedy,* 43 Cal. 643; *Cochran* v. *Guild,* 106 Mass. 29, 8 Am. Rep. 296; *Gillmor* v. *Dale,* 27 Utah, 372, 75 Pac. 932. In the case at bar, t'♯ lands having become the property of the United States at the time the taxes were levied and assessed, and no longer subject to taxation, the acts of the taxing officers were void and of no effect.

For the foregoing reasons, the judgment of the lower court is affirmed.

KENT, C. J., and DOAN, J., concur.