JANET S. MAGINNIS v. THE BOROUGH OF RUTHERFORD.

Argued November 8, 1905—Decided February 26, 1906.

1. The act of February 24th, 1882 (*Gen. Stat., p.* 3358, *pl.* 365), makes it unnecessary to sell for the subsequent taxes land which has already been purchased by the municipality at a tax sale.

2. The record in the county clerk's office of a certificate of sale for taxes to the municipality itself, is notice to subsequent purchasers not only of the lien of the taxes for which the sale was had, but also of subsequent taxes assessed prior to the actual redemption of the property.

3. Where a certificate of sale for taxes to the municipality itself has been recorded in the county clerk's office, the lien of subsequent taxes does not expire until the property is actually redeemed.

4. Sales to the municipality itself for subsequent taxes are not a waiver of the lien of a prior sale to the municipality under the act of March 14th, 1879 (*Gen. Stat., p.* 3353), and the supplements thereto.

5. Under the act of March 14th, 1879 (*Gen. Stat., p.* 3353), and the supplements thereto, the municipal authorities are not authorized to release property sold to the municipality for taxes from the lien except upon payment in full.

On *certiorari*.

Before Justices DIXON, GARRISON and SWAYZE.

For the prosecutor, *Edward J. Luce* and *Walter A. Kipp*.

For the defendant, *John M. Bell.*

The opinion of the court was delivered by

SWAYZE, J.   The writ in this case brings up for review the proceedings of commissioners of adjustment for the borough of Rutherford appointed under the act of 1898 (*Pamph. L., p.* 442), so far as they attempted to adjust the taxes of 1890 and 1895 upon lands of the prosecutrix. Returns were made to the county clerk of the taxes of 1890 on February 3d, 1891, and of the taxes of 1895 on February 6th, 1896. The title of the prosecutrix was acquired March 13th, 1896.

Section 16 of the act of 1898 enacts that its provisions shall not apply to or affect the interest of any *bona fide* purchaser whose purchase was made subsequent to the expiration of the lien of taxes provided for by the law subsisting at the time of the purchase. Under this section the questions arise whether the prosecutrix was a *bona fide* purchaser, and whether the lien of these taxes had expired on March 13th, 1896.

At the time the taxes were assessed and returned, the act of March 23d, 1888, a supplement to the Borough act of 1878, was in force. Section 16 of this act (*Gen. Stat., p.* 198, *pl.* 118) provided for the collection of unpaid taxes pursuant to the act of March 14th, 1879, and the supplements thereto. *Poillon* v. *Rutherford,* 29 *Vroom* 113; *Landis* v. *Vineland,* 31 *Id.* 271.

Section 15 of the act of 1879 (*Gen. Stat., p.* 3356, *pl.* 344) enacts that in case the return is not made at the time provided (February 1st), the tax shall cease to be a lien as against a purchaser or mortgagee in good faith—that is, without notice. *Robinson* v. *Hulick,* 38 *Vroom* 496.

The prosecutrix had no actual knowledge of the taxes, and

the notice relied upon to save the lien is a constructive notice arising from a certificate of sale for the taxes of 1888, dated January 27th, 1890, and recorded in Bergen county clerk's office February 2d, 1891. Although the return of the taxes of 1888, for which this sale was had, was not made until February 4th, 1889, the owner of the property, from March 27th, 1888, until June 15th, 1892, including the whole period of the assessment of the taxes and the proceedings for collection, was one Brinkerhoff. He was not a *bona fide* purchaser or mortgagee, and was therefore not within the terms of the fifteenth section of the act of 1879. As to him, the lien continued for two years from December 20th, 1888 (*Robinson* v. *Hulick,* 38 *Vroom* 496), and the sale was made within that time.

This sale and the certificate therefore were made to the borough, and continued in force the lien of the borough for the taxes of 1888. *In re Commissioners of Elizabeth,* 20 *Vroom* 488, 505.

The supplement of February 24th, 1882 (*Gen. Stat., p.* 3358, *pl.* 365), makes it unnecessary to sell lands purchased by the borough for subsequent taxes; such taxes are to be assessed as if no sale for taxes had been made, and remain a first lien on the lands, added to the original purchase-money, and must be paid before the lands can be redeemed.

When the prosecutrix took title, in March, 1896, the record disclosed the sale for the taxes of 1888. Notice that these taxes were unpaid put her upon inquiry to ascertain the sum necessary to redeem the property, and such inquiry would have disclosed the unpaid taxes of 1890 and 1895. By virtue of the sale for the taxes of 1888, the lien of the taxes of 1890 and 1895 was continued until the land was redeemed, and this lien had not expired at the time of the purchase of the land by the prosecutrix. The taxes of 1890 and 1895 were subject to adjustment by the act of 1898, unless the lien had been otherwise lost.

It is argued that the lien was lost either by an implied waiver or by a quit-claim deed given by the borough to John Kehoe, the grantor of the prosecutrix, December 10th, 1895.

The waiver relied on is claimed to arise from the fact that in 1895 the borough sold the property for the taxes of 1894 and became the purchaser. *Smith* v. *Specht,* 13 *Dick. Ch. Rep.* 47.

One plain distinction between this case and Smith *v.* Specht is that in the latter the subsequent sale was not to the municipality itself. The provisions of the charter of Elizabeth, which were before this court soon after the passage in 1886 of the original act for the adjustment of past-due taxes, contained provisions similar to those of the act of 1879.

In *In re Commissioners of Elizabeth,* 20 *Vroom* 488 (at *p.* 502), the court said: "By the city charter the certificate of sale does not transfer or divest the title. The certificate, by section 84, after it is recorded, constitutes simply a continuance of the original lien. * * * A certificate of sale made to the city, in effect, maintains its lien for taxes and assessments in *statu quo.* Everything is in *fieri* until a declaration of sale, duly executed and recorded, divests the title of the owner. Until that is accomplished, the taxes and assessments are still unsatisfied and unpaid, and, as such, are subject to adjustment under this act."

Prior to the passage of an act rendering an annual sale unnecessary, it was the custom of the city of Elizabeth to sell year by year. The act of 1882 (*Gen. Stat., p.* 3358, *pl.* 365) indicates that an annual sale was necessary under the act of 1879, also, in order to preserve the lien, and the supplement of 1882 was passed to obviate this very difficulty. The supplement does not prohibit annual sales, but merely makes them unnecessary. We think no waiver of the lien under the certificate of sale for the taxes of 1888 is to be inferred from the sales for subsequent taxes.

The quit-claim deed of December 10th, 1895, is by its terms sufficient to release all the then existing claims of the borough, including the lien for the taxes of 1888, and if the deed is to have that effect the lien for the taxes of 1895 is lost also, for the return was filed after February 1st, 1896. The question is whether the mayor and council had authority

to release the tax liens unless the amount due was paid to the borough. We are referred to two acts of 1890 as authorizing an abatement of past-due taxes. Neither are applicable to this case. The act of March 4th, 1890 (*Gen. Stat.; p.* 3429, *pl.* 671), is entitled "An act relative to past-due taxes in towns and townships." It is not a supplement to the act of 1879, and hence not within the terms of section 16 of the supplement to the Borough act (*Gen. Stat., p.* 198, *pl.* 118), which was the legislation in force at the time the deed was executed.

The act of March 24th, 1890 (*Gen. Stat., p.* 3431, *pl.* 679), is expressly declared by section 3 not to be operative unless the owner applies for a reduction within one year from the passage of the act.

The only power to discharge the lien of these taxes is that given by the act of 1879 and its supplements. Section 6 of the supplement of 1880 authorizes the sale of the land to any person paying the purchase-price therefor, together with all subsequent taxes and lawful interest. The purchase-price referred to is the amount of the original tax for which alone the land may be sold. *Gen. Stat., p.* 3353, *pl.* 334.

The supplement of 1882 (*Gen. Stat., p.* 3358, *pl.* 365) is still more explicit. It provides that the taxes shall be paid before the lands can be redeemed.

There was, we think, no power in the borough authorities to release this land from the lien of the taxes without payment in full.

It is not a case of a mere irregular exercise of a power, for the payment of the taxes in full was by statute a condition precedent to redemption.

The proceedings should be affirmed, with costs.